[63 NYS3d 86]

In the Matter of DAVID SCOTT KLARMAN, a Suspended Attorney, Respondent. GRIEVANCE COMMITTEE FOR THE TENTH JUDICIAL DISTRICT, Petitioner.

Second Department, October 25, 2017

### APPEARANCES OF COUNSEL

*Catherine A. Sheridan*, Hauppauge (*Nancy B. Gabriel* of counsel), for petitioner.

*David Scott Klarman*, East Hampton, respondent pro se.

### OPINION OF THE COURT

Per Curiam.

On December 2, 2003, the respondent pleaded guilty in the United States District Court for the Northern District of California to one count of mail fraud, in violation of 18 USC § 1341, and one count of money laundering, in violation of 18 USC § 1956 (a) (1) (B). Pursuant to the underlying plea agreement, the respondent acknowledged, inter alia, that the following facts were true:

> "(A) Between 1996 and 1999, I, as General Counsel of U.S. Wireless Corporation, and my colleague Oliver Hilsenrath, who was CEO, assumed control of several shell corporations in the British Virgin Islands. We intended and agreed to use these corporations to receive stock options and shares that we planned to misappropriate from our employer without proper authorization or disclosure and without adequate consideration.

> "(B) As part of this scheme and plan to defraud U.S. Wireless, I knowingly caused the company to issue by mail 130,520 shares of its stock to one of my shell corporations, IDS Telecom Investment Group, on December 31, 1999. Specifically, Hilsenrath and I signed and sent a letter to U.S. Wireless's transfer agent, Continental Stock Transfer & Trust Company, in which we falsely stated that IDS Telecom had purchased these shares upon the exercise of options and requested Continental Stock issue,

countersign, and register a certificate for 130,520 shares of original issue U.S. Wireless common stock. In reliance on this false representation, Continental Stock mailed by Federal Express a stock certificate for 130,520 shares from its offices in New York, New York to IDS Telecom at my attention at U.S. Wireless in San Ramon, California. During the same course of conduct and as part of a common scheme and plan to defraud U.S. Wireless, in 1999, I caused U.S. Wireless to issue through similar misrepresentations and via the mails, stock certificates to several other shell corporations under my sole or joint control, including Biskara Limited, Craiglands Limited, Eldoret Limited (aka MSD Investment Advisors, Inc.), and Silicon Valley Investment Partners, and to Borazon Limited, a shell corporation that I understand was under Hilsenrath's control.

"(C) I agree that I am responsible for all losses resulting from my scheme to defraud. I understand that the government calculates the loss value to the company associated with the issuance of these shares as . . . $5,321,634.76."

During the sentencing proceeding held on July 10, 2007, count two—the money laundering charge—was dismissed on the government's motion. As to the remaining count, mail fraud in violation of 18 USC § 1341, the respondent was sentenced, inter alia, to a period of three years' probation. Additionally, the respondent was directed to pay criminal monetary penalties in the amount of $100, having already repatriated $5.3 million to the United States to be paid as restitution to creditors of U.S. Wireless.

The respondent failed to notify this Court of his conviction as required under Judiciary Law § 90 (4) (c).

By decision and order on motion of this Court dated February 14, 2017 (2017 NY Slip Op 64266[U]), on the Court's own motion, the respondent was immediately suspended from the practice of law pursuant to Judiciary Law § 90 (4) (f) based on his conviction of a serious crime, and was directed to show cause at a hearing pursuant to 22 NYCRR 1240.12 (c) (2) (iv), before the Honorable Elaine Jackson Stack, as Special Referee, why a final order of suspension, censure, or disbarment should not be made.

At the hearing held on March 17, 2017, the Grievance Committee for the Tenth Judicial District introduced in evidence copies of documents relating to the respondent's conviction: the December 2, 2003 plea agreement, the judgment of conviction, dated July 10, 2007, and the transcript from the sentencing proceeding. The respondent, appearing pro se, testified in the narrative and submitted a copy of the probation officer's presentence report dated June 26, 2007, filed in connection with the criminal proceeding. During his testimony, the respondent admitted that he made mistakes, and largely attributed his misconduct to his failure to disclose offshore holdings in filings. The respondent further testified that the conviction has been difficult on him and his family, and he has tried to be a "good citizen." Concerning the respondent's failure to report his conviction to this Court, although the respondent testified that he was uncertain whether he was aware of such obligation, he admitted that, as an attorney, he should have known. However, he had gone through six years of controversy and litigation, and wanted to move past all of the negativity.

Although the respondent decided not to ask his family or friends to provide character evidence, after the hearing, he produced the documents that he submitted in support of his character and his charitable endeavors in connection with his criminal sentencing proceeding in 2007.

The Special Referee rendered a report dated April 15, 2017, in which she noted the following mitigation: that the respondent cooperated with the government during the criminal proceeding, accepted responsibility for his actions, returned funds he received as a result of those actions immediately and without demand, submitted letters in support of his character, and, after his conviction, made efforts to serve others and to earn an honest living. The Special Referee further noted that she "has seldom heard from a respondent, in any disciplinary hearing, who is so clearly and truly remorseful for his conduct."

The Grievance Committee now moves to confirm the report of the Special Referee to the extent that it reported on mitigation, and for the imposition of such discipline upon the respondent as this Court may deem just and proper. The respondent joins in the Grievance Committee's motion to confirm, and requests that no additional discipline be imposed.

Notwithstanding the foregoing evidence in mitigation, the record demonstrates that the respondent admitted that for a period of approximately three years, while serving as general

counsel of U.S. Wireless Corporation, he knowingly engaged in a scheme to defraud his employer and planned to misappropriate stock options and shares through the use of shell corporations. He made false representations to the stock transfer agent, which resulted, inter alia, in the issuance of 130,520 shares of original issue U.S. Wireless common stock. The respondent admitted that he knew he had crossed the line, and that his conduct was wrong. Clearly, the respondent was not a "minor player" in this fraudulent scheme, and his deceptive conduct resulted in a loss value to U.S. Wireless in excess of $5.3 million.

While the respondent requests that no further discipline be imposed, in part, given the passage of time since his conviction, we find that the remoteness of the offense to this proceeding is a direct result of the respondent's failure to honor his obligation under Judiciary Law § 90 (4) (c), and timely report his conviction. Indeed, some 13 years passed before the respondent's conviction came to this Court's attention, and there is no indication in this record that the notice was of the respondent's own initiative. Instead of notifying this Court of his conviction, the respondent certified his "retirement" with the Office of Court Administration, and continued to do so through 2014. By failing to report his conviction, the respondent evaded disciplinary consequences for his criminal conviction until this late date, which we find is an aggravating factor in determining the appropriate sanction to impose.

Based upon the foregoing, the petitioner's motion to confirm the Special Referee's report to the extent that it reported on mitigation, in which the respondent joins, is granted.

Under the totality of circumstances, we conclude that the respondent's misconduct warrants his disbarment from the practice of law, effective immediately.

ENG, P.J., MASTRO, RIVERA, DILLON and BALKIN, JJ., concur.

Ordered that the petitioner's motion to confirm the Special Referee's report, to the extent that it reported on mitigation, is granted; and it is further,

Ordered that the respondent, David Scott Klarman, a suspended attorney, is disbarred from the practice of law, effective immediately; and it is further,

Ordered that the respondent, David Scott Klarman, shall continue to comply with the rules governing the conduct of disbarred or suspended attorneys (see 22 NYCRR 1240.15); and it is further,

Ordered that pursuant to Judiciary Law § 90, the respondent, David Scott Klarman, is commanded to desist and refrain from (1) practicing law in any form, either as principal or as agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, judge, justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law; and it is further,

Ordered that if the respondent, David Scott Klarman, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency and the respondent shall certify to the same in his affidavit of compliance pursuant to 22 NYCRR 1240.15 (f).